**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**OCT 14 1999**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

EVAN B. ANDERSON; MERRILY
ANDERSON, husband and wife,

    Plaintiffs - Appellants,

    v.

INTERMOUNTAIN POWER
SERVICE CORPORATION,

    Defendant - Appellee.

No. 98-4175
(D. Ct. No. 96-CV-167-B)
(D. Utah)

---

**ORDER AND JUDGMENT** *

---

Before **TACHA**, **HOLLOWAY**, and **BALDOCK**, Circuit Judges.

---

Appellants, Evan and Merrily Anderson, filed suit against appellee,

Intermountain Power Service Corporation (IPSC), claiming violations of the

Americans with Disabilities Act, the Utah Antidiscrimination Act, and the

Employee Retirement Income Security Act of 1974 (ERISA). On September 21,

1998, the district court granted appellee's motion for summary judgment on all

claims and denied appellants' cross motion for summary judgment. The

---

*This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. This court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 36.3.

Andersons appeal the district court's denial of their ERISA claim. We affirm.

IPSC, a Utah nonprofit corporation, employed Evan Anderson from 1984 until 1989, when Mr. Anderson became totally disabled and left his job. At the time IPSC hired Mr. Anderson, IPSC provided its employees with a benefits package that included medical insurance. In its employee handbook, IPSC reserved the right to amend or terminate its benefit plans at any time.

Shortly after Mr. Anderson became disabled, he began to receive disability benefits under IPSC's Long Term Disability Plan. In February of 1990, IPSC notified Mr. Anderson that he was required to pay regular premiums if he wanted to keep his health insurance in effect and that his insurance would be canceled if payments were not made. Mr. Anderson failed to make timely premium payments in May, October and November of 1990 and again in February and March of 1991. In May and November of 1990 and March of 1991, IPSC notified Mr. Anderson by letter that his premiums were delinquent and his health insurance would be canceled if he failed to make the necessary payments. Moreover, in June and November of 1990 and in June of 1992, IPSC informed Mr. Anderson that his premium payments were due by the first of each month.

On March 29, 1991, IPSC learned that Mr. Anderson had accepted a lump-sum disability settlement. Accordingly, in a letter dated April 5, 1991, IPSC terminated Mr. Anderson's employment. In the same letter, IPSC noted that Mr.

Anderson had not made his overdue premium payments and canceled his medical coverage effective March 1, 1991. Shortly thereafter, IPSC agreed to reinstate Mr. Anderson's health insurance and continue his coverage.

In July of 1991, IPSC amended and restated its medical and dental benefits plan. Under the heading "Collection of Plan Participant Contributions," the new plan included the following language:

> The disabled employee shall submit the appropriate monthly contribution on a monthly basis to the Company. Payments shall be made in advance at the beginning of the month for which coverage applies; however, there is a thirty (30) day grace period. If full payment is not received by the end of the grace period, participation in this Plan shall end retroactively as of the last day of the month for which the last payment was timely made.

IPSC Medical and Dental Benefits Plan Wraparound Document § 4.06(b), at 10 (July 1, 1991) (hereinafter "Wraparound Document"). Mr. S. Gale Chapman, the President and Chief Operations Officer (COO) of IPSC, executed the Wraparound Document on IPSC's behalf.

Mr. Anderson failed to make his January 1995 premium payment until February 8, 1995, several days after the grace period had expired. As a result, IPSC canceled the Andersons' health insurance effective January 1, 1995.

Appellants first argue that IPSC did not follow corporate procedures when it amended the benefits plan in 1991. Specifically, appellants claim that IPSC's Board of Directors never approved the new benefit plan and Mr. Chapman did not

have the authority to amend the benefits package on his own. Second, appellants argue that IPSC breached its fiduciary duty to them when it narrowly interpreted § 4.06(b) of the Wraparound Document to require premium payment by the first of each month. In addition, appellants claim that interpretation of the language in § 4.06(b) is a question of fact to be determined by a jury. Third, appellants argue that IPSC breached its fiduciary duty to them because it canceled their insurance after permitting them to make partial payments as far in advance as they wished. Fourth, appellants argue that their breach of IPSC's benefits plan was not material. Fifth, appellants argue that IPSC could not cancel their insurance because it had promised Mr. Anderson that he could never lose his benefits. Sixth, appellants argue that IPSC discriminated against them in violation of both the benefits plan and ERISA. Finally, appellants argue that IPSC waived any requirement for timely monthly payments.

We review de novo a district court's grant of summary judgment pursuant to Fed. R. Civ. P. 56(c). Kaul v. Stephan, 83 F.3d 1208, 1212 (10th Cir. 1996).

> Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. When applying this standard, we examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. If there is no genuine issue of material fact in dispute, then we next determine if the substantive law was correctly

- 4 -

applied by the district court.

Id. (quoting Wolf v. Prudential Ins. Co., 50 F.3d 793, 796 (10th Cir. 1995) (further citations omitted)). We find that there are no material facts in dispute and conclude that the district court correctly applied the substantive law.

## I. Did IPSC Properly Amend Its Benefits Plan?

Appellants insist that IPSC violated corporate procedures when Mr. Chapman amended its benefits plan in 1991 because Mr. Chapman did not have the authority to amend the plan and IPSC's Board of Directors never approved the amendments. To determine whether appellants' claim is accurate, we must engage in "a fact-intensive inquiry, under applicable corporate law principles, into what persons or committees within [IPSC] possessed plan amendment authority, either by express delegation or impliedly, and whether those persons or committees actually approved the new plan provision . . . ." Curtiss-Wright Corp. v. Schoonejongen, 514 U.S. 73, 85 (1995).

Because IPSC is a nonprofit corporation, Curtiss-Wright directs us to look to Utah nonprofit corporation law. Utah Code Ann. § 16-6-40 permits a nonprofit corporation to delegate management of its affairs to its officers and agents through its articles of incorporation or bylaws. Accordingly, IPSC's bylaws authorize IPSC's officers to "manage the activities of [IPSC] and its employees within the guidelines provided by the Board [of Directors]." IPSC Bylaws art. II,

- 5 -

§ 2.1.1 (May 11, 1989). Furthermore, the bylaws state that IPSC's officers include "a President and Chief Operations Officer." Id. art. 5, § 5.1.

Pursuant to Utah law and through its bylaws, IPSC had authorized Mr. Chapman, president and COO of IPSC, to manage IPSC's activities and its employees. Therefore, we hold that Mr. Chapman possessed the authority under Utah law to amend IPSC's medical and dental benefits plan. IPSC properly amended its benefits plan, and IPSC is entitled to summary judgment on this issue.

**II. Did IPSC Breach Its Fiduciary Duty to the Andersons?**

Appellants claim that IPSC breached its fiduciary duty to them because (1) it interpreted the language in § 4.06(b) of the Wraparound Document to require premium payments by the first of the month and (2) it canceled their insurance after accepting partial payments in advance. Specifically, appellants insist that § 4.06(b) merely requires payment by the tenth day of each month and that partial payment of a premium entitles the payee to a prorated amount of insurance which, in turn, extends the grace period.

Section 4.06(b) states, "Payments shall be made in advance at the beginning of the month for which coverage applies; however, there is a thirty day grace period. If full payment is not received by the end of the grace period, participation in this Plan shall end . . . ." Using our common sense, we read

§ 4.06(b) to mean that payments were due on the first day of each month.  In addition, IPSC informed Mr. Anderson on multiple occasions that his premium payments were due on the first of each month.  Therefore, appellants' strained interpretation of § 4.06 is without merit.  Moreover, § 4.06(b) makes it clear that premiums must be paid-in-full each month.  There is no provision in the plan for beneficiaries to receive prorated insurance in return for partial payments.  Thus, IPSC is entitled to summary judgment on appellants' breach of fiduciary duty claims.

**III.  Was the Andersons' Breach of IPSC's Benefits Plan Material?**

Appellants argue that their breach of IPSC's benefits plan was not material because they made a partial premium payment before the grace period expired and their failure to pay the entire premium did not impact the financial well-being of IPSC.  As discussed above, the plan documents do not provide for partial payments.  Therefore, any such payments are irrelevant to the question of whether the Andersons' breach was material, and IPSC is entitled to summary judgment on this issue.

**IV.  Did IPSC Promise Mr. Anderson He Could Never Lose His Benefits?**

Appellants claim that through oral promises and written documents, IPSC promised Mr. Anderson he could never lose his benefits.  "ERISA requires all modifications to an employee benefit plan to be written and to conform to the

formal amendment procedures." Miller v. Coastal Corp., 978 F.2d 622, 624 (10th Cir. 1992) (internal citations omitted). Moreover, an employer's "promise to provide vested benefits 'must be incorporated, in some fashion, into the formal written ERISA plan.'" Chiles v. Ceridian Corp., 95 F.3d 1505, 1511 (10th Cir. 1996) (quoting Jensen v SIPCO, 38 F.3d 945, 949 (8th Cir. 1994)). In addition, an employer's intent to vest benefits "'must be stated in clear and express language.'" Id. at 1513 (quoting Wise v. El Paso Natural Gas Co., 986 F.2d 929, 937 (5th Cir. 1993)). In the instant case, there are no plan documents which state in any way that IPSC intended to vest Mr. Anderson's benefits. Accordingly, IPSC is entitled to summary judgment on this issue.

## V.  Did IPSC Discriminate Against the Andersons?

Appellants argue that IPSC discriminated against them under both IPSC's benefits plan and ERISA. They claim IPSC consciously and systematically amended the plan in a concerted effort to strip them of their insurance. However, "ERISA does not create any substantive entitlement to employer-provided health benefits . . . . Employers . . . are generally free under ERISA, for any reason at any time, to adopt, modify, or terminate welfare plans." Curtiss Wright, 514 U.S. at 78. Therefore, appellants' complaint that IPSC "amended its plan to deprive [them] of health benefits is not . . . cognizable . . . under ERISA," id., and IPSC is entitled to summary judgment on appellants' discrimination claim

**VI. Did IPSC Waive Its Right to Require Timely Premium Payments?**

Finally, appellants argue that IPSC waived any requirement for timely premium payments because it accepted partial payments and previously had accepted late payments. As discussed above, "ERISA requires all modifications to an employee benefit plan to be written and to conform to the formal amendment procedures." Miller, 978 F.2d at 624. In the instant case, the plan documents provided for monthly premium payments and cancellation of coverage for failure to pay. There is no evidence which suggests that IPSC ever modified its benefits plan through formal amendment procedures to provide for partial or late payments. In addition, as IPSC points out, appellants have failed to establish the elements of waiver. See K&T, Inc. v. Koroulis, 888 P.2d 623, 628 (Utah 1995). Thus, IPSC is entitled to summary judgment on appellants' waiver claim.

**AFFIRMED**.

ENTERED FOR THE COURT,

Deanell Reece Tacha
Circuit Judge